**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JANA COMPTON, | § | |
|              Plaintiff, | § | |
| v. | § | No. 3:09-CV-0515-B-BH |
| | § | |
| MICHAEL ASTRUE, Commissioner of | § | |
| the Social Security Administration, | § | |
|              Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this case was automatically referred for proposed findings of fact and recommendation for disposition. Before the Court are Plaintiff's Motion for Summary Judgment (doc. 17), filed August 24, 2009, and *Commissioner's Motion for Summary Judgment* (doc. 20), filed October 16, 2009. Based on the relevant filings, evidence, and applicable law, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED**, *Commissioner's Motion for Summary Judgment* be **DENIED**, and the case be remanded to the Commissioner for further proceedings.

**I. BACKGROUND**[1]

**A. Procedural History**

Jana Compton ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A). On October 26, 2005, Plaintiff applied for disability benefits. (Tr. at 15.) She claimed she had been disabled since March 10, 2005, due to schizophrenia, depression, or bipolar mixed. (Tr. at 62, 67, 71.) The Social Security Administration denied Plaintiff's application initially and upon reconsideration. (Tr. at 15.) A hearing before an

---

[1] The background information comes from the transcript of the administrative proceedings, which is designated as "Tr."

Administrative Law Judge ("ALJ") was held on September 19, 2007. (Tr. at 257-85.) In a written decision, the ALJ found Plaintiff not disabled. (*See* Tr. at 15-21A.) The Appeals Council found no reason to review the ALJ's decision and denied Plaintiff's request for review. (Tr. at 6.) Consequently, the ALJ's decision is the final decision of the Commissioner. (*Id.*) Plaintiff appealed the Commissioner's decision to this Court pursuant to 42 U.S.C. § 405(g) on March 17, 2009.

**B. Factual History**

    **1. Age, Education, and Work Experience**

Plaintiff was born on May 30, 1963, and has three years of post-secondary education. (Tr. at 62, 75, 261.) Her past relevant work experience includes various clerk jobs. (Tr. at 72, 82-88, 262-65.)

    **2. Psychological or Psychiatric Evidence**[2]

Plaintiff first sought psychiatric treatment on April 28, 2005, after she "saw on WebMD" that she "might fit criteria for bipolar disorder". (Tr. at 139.) Based upon complaints from Plaintiff of erratic sleep, irritability with a one-year-old, a mother who was "probably bipolar", a brother who was diagnosed as bipolar, depressive phases, compulsive buying, a recent firing for being "snappy" and not following directions, and racing thoughts, Dr. Ricardo Schack diagnosed a mixed bipolar disorder and a chronic weight problem and prescribed medication. (*Id.*) Plaintiff continued to see Dr. Schack once or twice a month for the rest of the year based on the initial diagnosis. (*See* Tr. at 140-41.) His December 2005 notation states that Plaintiff was "overall better" at that time. (Tr. at 141.)

---

[2] Because this action is ultimately resolved based upon a mental impairment, a recitation of the medical evidence is unnecessary.

On February 1, 2006, Katherine Donaldson, Psy.D,[3] evaluated Plaintiff. (Tr. at 133-36.) Dr. Donaldson noted that Plaintiff did not show evidence of a thought disorder but did have symptoms of mania, such as "pressured speech, racing thoughts, and distractibility" and reported disturbance in both appetite and sleep. (Tr. at 135.) She also noted that Plaintiff had poor judgment and good concentration. (*Id.*) Dr. Donaldson diagnosed moderate "Bipolar I Disorder", assigned a Global Assessment of Functioning ("GAF") score of 55, and stated her belief that Plaintiff would likely benefit from group therapy. (Tr. at 136.)

The next month, a State Agency Medical Consultant ("SAMC") completed a Mental Residual Functional Capacity Assessment at the request of the Commissioner. (Tr. at 127-29.) The SAMC found Plaintiff to be moderately limited in (1) understanding, remembering, and carrying out detailed instructions; (2) maintaining attention and concentration for extended periods; (3) performing activities within a schedule and maintaining regular attendance and punctuality within customary tolerances; (4) working with others without distraction; (5) completing normal workday and workweek without interruptions from psychologically based symptoms and maintaining a consistent pace without an unreasonable number or length of rest periods; (6) getting along with others; and (7) responding appropriately to changes in work setting. (Tr. at 127-28.) The SAMC assessed Plaintiff's functional capacity as follows: "Claimant is able to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact [with] others, and respond to changes." (Tr. at 129.) In a Psychiatric Review Technique ("PRT") form, the SAMC noted that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration,

---

[3] "Psy.D." refers to a Doctor of Psychology or professional doctorate in Clinical Psychology.

persistence, or pace, and no episodes of decompensation. (Tr. at 123.) The SAMC found that Plaintiff had "[a] medically determinable impairment . . . that does not precisely satisfy" the requirements for an affective disorder under section 12.04 of the Listings, namely bipolar disorder. (Tr. at 116.) The Consultant's Notes associated with the PRT essentially parallel Dr. Schack's April 28, 2005 notes and Dr. Donaldson's notes. (*Compare* Tr. at 125 *with* Tr. at 133-36, 139.)

On May 30, 2006, Dr. Schack completed a "Mental Residual Functional Capacity Questionnaire". (Tr. at 192-95.) He found Plaintiff moderately to markedly limited in various respects of social interaction, sustained concentration and persistence, and adaptability. (*See id.*) The doctor noted that Plaintiff cannot cope with "even minimal stressors" and that she can have very poor judgment with money. (Tr. at 194-95.)

Four months later, Dr. Schack completed a "Mental Impairment Questionnaire for Major Depressive & Bipolar Disorder" in which he noted monthly visits with Plaintiff and a guarded prognosis. (Tr. at 160-65.) He found that Plaintiff had "bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes." (Tr. at 161.) Her depressive syndrome was characterized by (1) anhedonia or pervasive loss of interest in almost all activities, (2) sleep disturbance, (3) psychomotor agitation or retardation, (4) decreased energy, (5) feelings of guilt or worthlessness, and (6) difficulty concentrating or thinking. (*Id.*) The finding of a manic syndrome was based upon pressures of speech, flight of ideas, decreased need for sleep, and easy distractibility. (*Id.*) Dr. Schack found three episodes of decompensation for at least two weeks duration within the prior year; he also found that Plaintiff was moderately limited in her daily activities and maintaining social functioning, concentration, persistence, or pace. (Tr. at 162.) He also noted that Plaintiff suffered from a "residual disease process that has resulted in

4

such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause [her] to decompensate." (*Id.*) According to Dr. Schack, Plaintiff would be unable to meet competitive standards or was seriously limited in every mental ability or aptitude necessary to work,[4] and her impairment would cause her to miss work two or three times a month. (Tr. at 163-64.)

     Dr. Schack's monthly progress notes for March to August 2007 state that Plaintiff was "doing well" but had complaints regarding sleeping and gaining weight. (Tr. at 235.) He completed another "Mental Impairment Questionnaire for Major Depressive & Bipolar Disorder" in September 2007, which differed from his prior one. (*Compare* Tr. at 160-65 *with* Tr. at 237-42.) He no longer found a bipolar syndrome; her depressive syndrome was characterized by four components (anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with weight gain, psychomotor agitation or retardation, and decreased energy) rather than six; her manic syndrome was characterized only by easy distractibility. (Tr. at 238.) Although Plaintiff was now markedly limited in her ability to maintain social functioning and concentration, persistence, or pace, she had experienced no relevant episodes of decompensation. (Tr. at 239.) However, Dr. Schack now noted a "[c]urrent history of 1 or more years inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement." (Tr. at 240.) In addition, while Plaintiff remained seriously limited or unable to meet competitive standards in most mental abilities or aptitudes necessary to work, she was no longer seriously limited in three listed abilities or aptitudes, and she was unable to meet standards in only five abilities or aptitudes. (*See* Tr. at 240-41.) Nevertheless, Dr. Schack indicated that Plaintiff would miss work at least once a

---

[4] Dr. Schack indicated that Plaintiff was unable to meet standards for fourteen of twenty-five listed abilities and aptitudes, and was seriously limited in the other eleven. (*See* Tr. at 163-64.)

week on average due to her impairments and would have difficulty working a regular job on a sustained basis because she could not handle social situations well.  (Tr. at 241.)

### 3.  Hearing Testimony

At the hearing before the ALJ, Plaintiff appeared in person and through her attorney.  (Tr. at 257.)  Plaintiff and a vocational expert testified at the hearing.  (Tr. at 261-83.)

#### a.  *Plaintiff's Testimony*

Plaintiff testified that she was unable to work because she did not handle criticism and could not concentrate.  (Tr. at 266.)  She conceded that she had no physical reason for her inability to work.  (*Id.*)  She had been under mental health care since 2005, when she was fired from her last job for having "an attitude problem" and inability to concentrate or multi-task.  (Tr. at 265-67.)  She reiterated many of the complaints made to her physicians, *i.e.*, problems with sleeping, eating, compulsive spending, racing thoughts, and concentration as well as auditory and visual hallucinations.  (Tr. at 267-80.)

#### b.  *Vocational Expert Testimony*

Susan Brooks, a vocational expert ("VE"), also testified at the hearing.  (Tr. at 280-83.)  She testified that a hypothetical person of the same age and education as Plaintiff who had mild deficits in concentration and attention but could concentrate for extended periods of time, moderate deficits interrelating with others, could appropriately respond to routine changes in work environment, could perform detailed but not complex tasks or respond to detailed instructions, and was limited to semi-isolated work environment with limited public contact would be able to perform Plaintiff's past relevant work as a data entry clerk and invoice clerk.  (Tr. at 280-81.)  When the hypothetical was modified to incorporate limitations noted by the SAMC as set out in Ex. 1F (Tr. at 127-29), the VE

stated that such person would not be able to perform any of Plaintiff's past relevant work. (Tr. at 282-83.)

**C. ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on November 21, 2007. (Tr. at 15-21A.) He found that Plaintiff had not engaged in substantial gainful activity at any time relevant to his decision. (Tr. at 17.) He next found that Plaintiff's bipolar disorder constituted a severe impairment based upon the records of Dr. Donaldson and Dr. Schack. (Tr. at 17-18.) Without citation to the psychiatric record, he found that Plaintiff had no impairment or combination of impairments that satisfied the criteria of any impairment listed in the social security regulations. (Tr. at 17-19.)

In determining Plaintiff's mental residual functional capacity ("RFC"), the ALJ recognized Plaintiff's bipolar disorder but concluded that "there is minimal evidence to substantiate this as debilitating." (Tr. at 21.) He found that she retained the mental RFC to perform a full range of work at all exertional levels with the following limitation: "The claimant retains the ability to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, and respond to changes in the workplace. Interaction with others is limited to the work being performed." (Tr. at 19.) In reaching this finding, the ALJ indicated that he had carefully considered the entire record but did not discuss the psychological evaluations. (*See* Tr. at 19-21.)

The ALJ considered Plaintiff's mental RFC and testimony from the VE to conclude that she retained the ability to perform her past relevant work as a data entry invoice clerk. (Tr. at 21.)

7

## II. ANALYSIS

### A. <u>Legal Standards</u>

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.* at 436 & n.1.

**2. Disability Determination**

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64. The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony*, 954 F.2d at 292.

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies

his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B. Issues for Review**

Plaintiff presents the following issues for review:

(1) the ALJ improperly determined that Plaintiff's mental impairment did not meet the requirements of a listed impairment;

(2) the ALJ improperly determined Plaintiff's physical RFC;

(3) the ALJ improperly determined Plaintiff's mental RFC; and

(4) the ALJ erred in finding that Plaintiff can perform her past relevant work.

(Pl. Br. Supp. Mot. Summ. J. ("Pl. Br.") at 1.)

**C. Issue One:  Listed Impairment**

Plaintiff first argues that the ALJ erred at Step 3 of the sequential process by improperly determining that her mental impairment failed to meet the requirements of Listing 12.04(C)(2) or (3). (*See* Pl. Br. at 3-5.) She also contends that the ALJ erred when he failed to properly consider Dr. Schack's September 2007 opinion. (*See id.* at 4-5.)

**1. Step 3 Analysis**

According to the Social Security regulations, if a claimant is not working, has a severe impairment, and meets the duration requirement, it must then be determined whether the claimant

10

suffers from one of the "listed" impairments or an impairment equal to one of the listed impairments. 20 C.F.R. § 404.1520. If it is determined that the claimant suffers from a listed impairment or one equal thereto, the inquiry ends and the claimant is entitled to benefits. *Id.* § 404.1520(d). The claimant has the burden of proving that her impairment or combination of impairments meets or equals the listings. *Id.*; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). To meet a listed impairment, the claimant's medical findings, *i.e.*, symptoms, signs and laboratory findings, must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To equal a listing, the claimant's medical finding must be "at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. *Id.* § 404.1526(b).

Plaintiff argues that contrary to the ALJ's finding, her mental impairment meets 20 C.F.R. Pt. 404, Appendix 1, Subpt. P § 12.04(C)(2) and (3). Listing 12.04 requires:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met . . . when the requirements in C are satisfied.
>
> . . .
>
> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> > 1. Repeated episodes of decompensation, each of extended duration; or

11

>   2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
>   3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The ALJ's Step 3 consideration of Listing 12.04(C) states in full: "The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria."[5] (*See* Tr. at 19.) Although the ALJ recognized and accepted medical evaluations by Dr. Donaldson (Ex. 1F (Tr. at 112-58)) and Dr. Schack (Exs. 4F (Tr. at 191-95) and 8F (Tr. at 236-42)) when determining that Plaintiff's bipolar disorder was severe at Step 2, he did not discuss these evaluations at Step 3. (*See* Tr. at 17-19.) In the Step 2 context, the ALJ stated:

>   Dr. Schack noted the claimant was [sic] had marked limitations in maintaining social functioning and maintaining concentration, persistence or pace. Dr. Schack also noted that while the claimant did *not* have serious limitations she was not precluded from carry[ing] out detailed instruction, setting realistic goals/making plans, dealing with stress of semiskilled and skilled work, maintaining socially appropriate behavior or us[ing] public transportation (Exhibit 8F).

(Tr. at 18 (emphasis added and internal quotation marks omitted).)[6]

Although the ALJ found that the evidence did not establish a listed impairment under Listing 12.04(C), (Tr. at 19), Dr. Schack's September 2007 evaluation specifically indicates that Plaintiff's bipolar impairment satisfies Listing 12.04(C)(2) and (3), (*see* Tr. at 239-40). While recognizing part

---

[5] The ALJ's Step 3 analysis begins by erroneously mentioning Listing 12.06 rather than 12.04. However, it is clear from the discussion that the ALJ was considering Listing 12.04. Because "perfection in administrative proceedings is not required", *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988), the error is mentioned only to clarify the record.

[6] The italicized "not" completely misstates the contents of Exhibit 8F. (*See* Tr. at 241 (stating that Plaintiff was "[s]eriously limited, but not precluded" with respect to the abilities and aptitudes mentioned by the ALJ).)

12

of this evaluation during Step 2, the ALJ never mentioned the section that addresses the requirements of Listing 12.04(C). (*See* Tr. at 18-19.)

### 2. Treating Physicians

Because Plaintiff argues that the ALJ erred by not properly considering the September 2007 opinion as it relates to Step 3 (Pl. Br. at 4), the standards applicable to treating physicians must be addressed.

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1527(c)(2). Every medical opinion is evaluated regardless of its source but the Commissioner generally gives greater weight to opinions from a treating physician. *Id.* § 404.1527(d). In fact, when "a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence", the Commissioner will give such an opinion controlling weight. *Id.* Controlling weight is also not given to a treating physician's opinion as to a claimant's disability because determinations of disability are legal issues reserved for the Commissioner. *Id.* § 404.1527(e); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Unless controlling weight is given to a treating source's opinion, the Commissioner considers six factors in deciding the weight given to each medical opinion: (1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which "tend[s] to support or contradict the opinion." *See id.* § 404.1527(d)(1)-(6).

While an ALJ should afford considerable weight to opinions and diagnoses of treating physi-

cians when determining disability, sole responsibility for such determination rests with the ALJ. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Id.* In addition, a treating physician's opinion may be given little or no weight when good cause exists. *Id.* at 455-56. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 456.

Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id*. at 453. Despite that broad pronouncement, such detailed analysis is unnecessary when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" or when the ALJ has weighed "the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id*. at 458.

From the ALJ's brief consideration of Listing 12.04(C), it appears that he did not properly consider all the evidence from Plaintiff's treating physician, Dr. Schack. The psychiatric record in this case consists of opinions from Dr. Schack, Dr. Donaldson, and a State Agency Medical Consultant. The ALJ relied on the opinions of Dr. Schack and Dr. Donaldson to find a severe bipolar impairment at Step 2. At no point in his disability determination did the ALJ find that any doctor's opinion was more well-founded than another. Nor did the ALJ weigh the opinions of Dr.

14

Schack against another medical opinion. The September 2007 opinion is not a medical source opinion on an issue reserved to the Commissioner under 20 C.F.R. § 404.1527(e), and the ALJ conducted no detailed analysis under § 404.1527(d)(2) before rejecting that opinion. He made no attempt to show good cause for rejecting the opinion. When an ALJ fails to consider all evidence from a treating source and fails to present good cause for rejecting it, the matter should be remanded for further consideration. *See Myers v. Apfel*, 238 F.3d 617, 621-22 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 455-58 (5th Cir. 2000). An "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

The Commissioner contends that substantial evidence supports the ALJ's Step 3 determination. (Def.'s Mem. Supp. Mot. Summ. J. at 8-12.) He argues that the ALJ was not required to accept Dr. Schack's opinion because it was conclusory and inconsistent with the record as a whole. (*Id.* at 9.) He points to alleged inconsistent evidence and submits that it is proper to reject a treating physician's opinion when the physician is "leaning over backward to support the application for benefits." (*Id.* at 10-11.)

Under the facts of this case, there is no need to determine whether substantial evidence supports the Step 3 determination or whether the September 2007 opinion is conclusory or inconsistent with the record. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455; *accord Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so.") The ALJ committed legal error when he stated no reasons for rejecting the September 2007 opinion as it

15

relates to Listing 12.04(C). *See Waters v. Massanari*, No. 4:00-CV-1656-Y, 2001 WL 1143149, at *11 (N.D. Tex. Sept 24, 2001) (adopting recommendation of Mag. J. which noted that the Commissioner had conceded "legal error" when the ALJ improperly evaluated opinions of a treating physician). Additionally, although an ALJ may reject a treating physician's opinion when the physician lacks credibility, the ALJ must find "with support in the record, that the physician is not credible and is 'leaning over backwards to support the application for disability benefits.'" *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). The ALJ in this case made no finding required by *Scott*.

Given the ALJ's legal error in his consideration of the September 2007 opinion of Dr. Schack, this case should be remanded with directions to the ALJ to apply the correct legal standard as set forth in *Newton*. *See Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990) (holding that when the Commissioner "has relied on erroneous legal standards in assessing the evidence, he must reconsider" his decision under the correct legal standard); *accord Cline v. Astrue*, 577 F. Supp. 2d 835, 850 (N.D. Tex. 2008) (accepting recommendation of Mag. J.). Because the ALJ erred at Step 3 in the consideration given to a treating physician's opinion and the error necessarily impacts the two remaining steps of the sequential disability determination process, the Court does not consider the remaining issues raised by Plaintiff.

### III. RECOMMENDATION

*Plaintiff's Motion for Summary Judgment* (doc. 17) should be **GRANTED**, the *Commissioner's Motion for Summary Judgment* (doc. 20) should be **DENIED**, and the decision of the Commissioner should be **REVERSED** and the case **REMANDED** for further proceedings.

**SO RECOMMENDED**, on this **30th** day of November, 2009.

                                             _____
                                             IRMA CARRILLO RAMIREZ
                                             UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                             _____
                                             IRMA CARRILLO RAMIREZ
                                             UNITED STATES MAGISTRATE JUDGE